39748).
*Winship E. Rees,* for appellees.

## 39727. RADFORD v. THE STATE.

Hɪʟʟ, Chief Justice.

Defendant was found guilty of two counts of aggravated assault and one count of murder in connection with a series of attacks on taxi drivers in Warner Robins. He was sentenced to life imprisonment for murder, to 10 years for one aggravated assault charge, and to 8 for the other. Defendant appeals.

The evidence showed the defendant shot a gun into the back of the front seat of a cab in which he and Troy Clarington were passengers. (This incident is the subject of the first assault charge.) The gun had been aimed at the driver, but the bullet lodged in the seat. The driver stopped the car, and Clarington hopped out and ran away. Defendant got out and told the driver he was going to "blow [him] away." Fortunately for the driver, defendant's gun misfired.

Approximately a week later defendant again requested a cab. This time the driver arrived with a companion, and when they reached the destination, defendant fumbled in his pockets and he then turned to run without paying. The driver's companion threw a soft drink bottle at defendant, and defendant fired several shots at the cab, hitting it twice according to the cab driver's testimony. (The second assault count is based on this occurrence.)

Eleven days later a third cab driver was found shot through the back. The bullet had exited through the victim's chest, near his heart. A bullet hole was found in the back of the driver's seat, and the interior of the taxi was splattered with blood. The driver's money and his dollar-sign shaped money clip were missing from his shirt pocket.

Clarington testified defendant had said he was going to "cap a cab driver" the night of the first assault. Several days after the homicide, defendant said, "I told you I was going to do it." Clarington was in defendant's house shortly after the homicide and observed defendant washing some money which appeared to have blood on it. Defendant first hung the money over the cardboard tube of a coat hanger and later pressed the bills with a steam iron on a hospital sheet used as an ironing board cover. Clarington also testified to seeing a dollar-sign shaped money clip in defendant's home that night. Several days later after a newspaper account reported the victim had been shot from the front, defendant told Clarington the report was

wrong because he had shot the victim from behind.

The coat hanger and hospital sheet were recovered from defendant's house, and tests revealed the presence of blood. Tests on the bullet removed from the seat in the first assault and on the bullet which killed the third victim showed they had been fired from the same gun. The gun offered as the murder weapon was traced to the defendant. Tests revealed the recovered bullets were consistent with their having been fired from this gun.

1. Defendant contends the evidence did not establish guilt beyond a reasonable doubt on the second count of aggravated assault and on the murder charge. As for the second assault, it is not essential for the state to locate bullets, bullet holes or expended shells to establish the crime of aggravated assault. OCGA § 16-5-21 (a) (Code Ann. § 26-1302). As for the murder, Clarington's testimony was corroborated by the blood samples and ballistics tests. The jury found Clarington's testimony to be credible and found the defendant guilty beyond a reasonable doubt. We find the evidence sufficient to allow a rational jury to find the defendant guilty of the second assault and of the murder beyond a reasonable doubt.

2. Defendant alleges as error the denial of his motion to dismiss the indictment and the denial of his motion to sever the three charges for trial because, he asserts, there is no common motive, scheme, etc., among them.

Here each victim was a driver for the White Top Cab Company in Warner Robins. The destination in each case was in the same general area and within walking distance of defendant's home. Each time the destination first given to the driver was either fictitious or was changed upon arrival. A gun was used in all three crimes, and the same gun was shown to have been used in the first and third. Defendant was positively identified by each assault victim. The three crimes occurred within a three week span. Under these circumstances, evidence of the two assault charges was clearly admissible in showing defendant's identity as to the murder charge.

The crimes and acts were so intertwined that some of the same evidence would be required at separate trials on each charge. Severance "lies within the sound discretion of the trial judge since the facts in each case are likely to be unique." *Dingler v. State,* 233 Ga. 462, 463 (211 SE2d 752) (1975). We find no abuse of discretion here. The trial court did not err in denying defendant's motions to dismiss the indictment and to sever.

3. Defendant alleges there was no evidence to establish that either the first assault or the homicide occurred in Houston County. (Defendant did not seek to show that the offenses did not occur in Houston County.)

Witness Odom testified he found the murder victim on Jackson Street. Odom also testified Jackson Street is in Houston County. A resident of Jackson Street testified to seeing the cab pass and then hearing a shot. This is sufficient to establish venue in Houston County as to the murder. See *Aldridge v. State,* 236 Ga. 773, 774 (225 SE2d 421) (1976).

The prosecution used a map of the City of Warner Robins to show where each offense occurred and the proximity to defendant's home. Warner Robins is wholly within Houston County. See *Hubbard v. State,* 208 Ga. 472, 474 (67 SE2d 562) (1951). The evidence was sufficient to establish venue in Houston County.

4. Defendant asserts as error the failure of the district attorney to reveal exculpatory material after a general Brady motion. See Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). The information allegedly wrongly withheld was the first assault victim's failure to identify Clarington as the other person present. The situation here involves a general request for anything exculpatory. In response to this type of request, the prosecutor must disclose evidence which creates a reasonable doubt of guilt which did not otherwise exist. United States v. Agurs, 427 U. S. 97, 112-113 (96 SC 2392, 2397, 49 LE2d 342, 349) (1976); *Williams v. State,* 250 Ga. 463, 465 (298 SE2d 492) (1983).

The failure of the victim to identify Clarington, a party to the first assault, does not create a reasonable doubt as to the guilt of defendant. The victim positively identified defendant in a photographic lineup and again at trial as the person who sat directly behind him in the cab and who later pointed a gun at him, shouted "I'm going to blow [you] away," and pulled the trigger several times. The district attorney did not violate Brady in failing to disclose that the victim was unable to identify Clarington.

5. Defendant asserts the prosecutor also failed to disclose exculpatory material in failing to identify two rebuttal witnesses who provided an alibi for Clarington at the time of the murder. Defense counsel was provided a list of all potential witnesses, including these two rebuttal witnesses, approximately four months before trial as required by OCGA § 17-7-110 (Code Ann. § 27-1403). This list did not disclose the subject of the witnesses' testimony.

Defendant is arguing, in essence, that not only must the district attorney disclose the names of witnesses but, to satisfy Brady, must also furnish a brief summary of their expected testimony. "Brady itself is not violated when Brady material is withheld from the defendant prior to trial and introduced by the state at trial." *Chambers v. State,* 250 Ga. 856 (302 SE2d 86) (1983), and cases cited. Moreover as discussed in Division 4, only material which

creates a reasonable doubt as to guilt must be disclosed under the demand made here; while evidence that Clarington was at a food store purchasing ice cream, a pound cake, and bread at the time of the murder may thwart defendant's hope to point suspicion at another, such rebuttal evidence is not exculpatory and does not create a reasonable doubt as to defendant's guilt. This enumeration is without merit.

6. Defendant alleges the trial court erred in allowing into evidence two photographs, one of the homicide victim and the other of the interior of his cab. He contends that there was no issue as to the cause of death and the photographs were introduced for the sole purpose of inflaming the jury. The photographs were relevant to the issues, and this enumeration presents no grounds for reversal.

7. Defendant asserts as error the trial court's refusal to give the following requested charge: "Where a party has evidence in his power and within his reach, by which he may repel a claim or charge against him, and omits to produce it, or, having more certain and satisfactory evidence in his power, relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim is well-founded; but this presumption may be rebutted." Defendant argues this charge was necessary to instruct the jury it could find the second assault had not occurred because the state did not produce physical evidence of bullet holes in the taxi.

The requested charge is based on OCGA § 24-4-22 (Code Ann. § 38-119) and focuses on the defendant's failure to produce evidence favorable to the defense. This court has previously held the section inapplicable in criminal cases and violative of a defendant's right to be convicted by evidence establishing guilt beyond a reasonable doubt. *Sokolic v. State,* 228 Ga. 788, 790 (187 SE2d 822) (1972); *Mills v. State,* 133 Ga. 155, 158 (65 SE 368) (1909).

Here we are faced with the situation where the defendant, not the prosecutor, is urging applicability of the charge. The charge, if given, would be more applicable to defendant than to the state and would apply to all the evidence on all counts, including the defendant's failure to testify. "This, undeniably, would fly in the face of justice and the right of defendant to remain silent as well as having an eroding effect on the state's burden of proving the defendant guilty beyond a reasonable doubt." *Brown v. State,* 150 Ga. App. 831, 832 (258 SE2d 641) (1979). The trial court acted properly in refusing to give the charge.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 12, 1983 —
REHEARING DENIED JUNE 1, 1983.

*Thomas Hylmon Wall III,* for appellant.

*G. Theron Finlayson,* District Attorney, *Michael J. Bowers, Attorney General, Nicholas G. Dumich, Assistant Attorney General,* for appellee.